UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHERRISE A. JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:19-CV-2146 NAB |
| KILOLO KIJAKAZI[1], Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Cherrise A. Johnson's appeal regarding the denial of disability insurance benefits under the Social Security Act. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 5.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Issues for Review**

Johnson presents three issues for review. She asserts that the administrative law judge ("ALJ") failed to (1) fully develop the record; (2) properly evaluate residual functional capacity; and (3) failed to properly evaluate opinion evidence. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported

by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

**III.  Discussion**

    **A.  ALJ's Decision**

The ALJ found that Johnson met the insured status requirements of the Social Security Act through December 31, 2017, and that she had not engaged in substantial gainful activity since December 1, 2015, the alleged onset date. (Tr. 15.) Next, the ALJ found that Johnson has the following severe impairments: schizoaffective disorder, bipolar type, major depressive disorder, anxiety, degenerative disc disease of the cervical and lumbar spine, and obesity. The ALJ found that Johnson's hypertension, hyperlipidemia, chest pain and numbness, tendonitis of the left rotator cuff, and arthritis were not severe medical impairments. The ALJ found that Johnson's neuropathy, and her chest pain or alleged congenital or congestive heart failure are not medically determinable impairments. (Tr. 16-17.)

3

The ALJ determined that Johnson did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Johnson had the residual functional capacity to perform light work. Specifically, the ALJ found that

> she can lift or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, or walk for a total of six hours in an eight-hour workday. Additionally, she can never climb ladders, ropes, scaffolding. She can occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs. She can occasionally perform overhead reaching with the left upper extremity (non-dominant). She can have no more than occasional exposure to unprotected heights and unprotected moving mechanical parts. She can perform work limited to simple, routine, repetitive tasks involving only simple, work-related decisions; few, if any workplace changes; and no work with an assembly line or conveyor belt. She may have occasional interaction with co-workers and supervisors, and no contact with the general public.

(Tr. 19.) Based on the foregoing, the ALJ found that Johnson was capable of performing her past relevant work as a surveillance-system monitor. (Tr. 25.) Therefore, the ALJ ultimately concluded that Johnson was not under a disability, as defined by the Social Security Act, from December 1, 2015 through September 27, 2018.

### B. Development of the Record

Johnson argues that the ALJ failed to fully and fairly develop the record. Specifically, she argues that there is insufficient medical evidence to address Johnson's physical ability to function in the workplace and therefore there is not substantial support for the RFC assessment.

An ALJ has a duty to develop the record fully and fairly, independent of the claimant's burden to press her case. *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010). A social security hearing is a non-adversarial proceeding, and the ALJ must develop the record so that "deserving claimants who apply for benefits receive justice." *Battles v. Shalala,* 36 F.3d 43, 44 (8th Cir. 1994). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v.*

4

*Shalala,* 22 F.3d 186, 189 (8th Cir. 1994); *see also Cox v. Astrue,* 495 F.3d 614, 620 n.6 (8th Cir. 2007) (a claimant's records need not explicitly discuss work-related limitations, as long as the records "describe [claimant's] functional limitations with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment").

Here, the record contains no opinion evidence regarding the effect Johnson's physical impairments have on her ability to work. Notably, the ALJ found Johnson's degenerative disc disease of the cervical and lumbar spine and obesity to be severe impairments. (Tr. 15.) Johnson's remaining complaints regarding her physical condition were found to be non-severe impairments or not medically determinable impairments. (Tr. 16-17.) Not even the state agency medical consultants addressed the issue of physical impairments, as they did not find Johnson's degenerative disc disease or obesity to be severe impairments. Nevertheless, the undersigned finds that substantial evidence supports the ALJ's conclusion that Johnson can perform light work and that Johnson suffered only mild degenerative changes to her back condition. Although Johnson's diagnostic tests showed disc bulging, there was no herniation or indication of nerve involvement, and her diagnoses were tempered in several instances by the words "mild" or "borderline." Additionally, although Johnson had several hospital visits and treatment notes, she generally had unremarkable examination findings and conservative treatment.

To support her argument, Johnson points to her two separate hospitalizations in January 2017 to suggest a physical RFC was necessary. On January 9, 2017, Johnson was admitted to rule out a stroke after she presented with right-sided arm numbness with chest pain. (Tr. 528-32.) She was discharged two days later and recommended to continue aspirin and a statin for chest pain. On January 18, 2017, she was again admitted after presenting with right upper extremity pain. A brain MRI showed no acute stroke, and a spine MRI was conducted to rule out cervical spine

stenosis. (Tr. 739.) The MRI of her cervical spine confirmed a bulging disc at C4-5 with "borderline" canal stenosis; C7-T1 facet arthropathy and "mild" bilateral foraminal stenosis; and medial deviation of the common and internal carotids, but no cervical disc herniation. (Tr. 764-65.) She was discharged the next day, January 19, 2017. On February 3, 2017, Johnson saw Dr. McFadden of People's Health Center, her primary care physician, for hypertension, hyperlipidemia, and emergency room discharge follow up. (Tr. 1216.) Johnson reported having pain of 0 out of 10 on a 10-point scale. (Tr. 1218.) Ten days later, Johnson returned to People's Health Center for an annual exam, and again reported her pain was a 0 out of 10. (Tr. 1222.)

Johnson presented to Dr. McFadden with arm pain at a reported 10 out of 10 on May 12, 2017. (Tr. 1228.) Dr. McFadden noted that Johnson's physical examination was normal, and she recommended that Johnson continue with Meloxicam, alternate with Tylenol, and referred her to orthopedics. On May 23, 2017, Johnson was seen by Dr. Mark Belew, an orthopedic surgeon, for her left shoulder pain. (Tr. 1050.) Dr. Belew diagnosed tendinitis of the left rotator cuff and referred Johnson to physical therapy to help regain range of motion and strength. Following eight sessions of physical therapy, Johnson returned to Dr. Belew on July 25, 2017, and reported improvement with range of motion and pain. Johnson found it hard to raise her arm outward away from her body, but noted it was getting better and described her current pain at 0 out of 10. (Tr. 1048.) Dr. Belew recommended an extension of physical therapy if Johnson's symptoms persisted, but there are no records to indicate Johnson sought further physical therapy.

As the ALJ noted, there are no records to reflect Johnson sought any treatment for her back or neck during the disability period until she requested a referral from her primary care physician for pain management on July 11, 2018, the day of her hearing with the ALJ. (Tr. 21, 40, 1254.) Her PCP ordered a lumbar spine x-ray, and the x-ray showed a "mild" degree of narrowing of the

6

L5-S1 disc space level; a "mild" degree of end plate spurring from L3-L4 through L5-S1; and "normal appearing alignment." (Tr. 1261.)

In sum, Johnson's imaging results showed only mild degenerative change, and it appears that Johnson took only NSAIDs and over-the-counter medication for her back and neck pain. *See, e.g., Cypress v. Colvin,* 807 F.3d 948, 951 (8th Cir. 2015) (no medically determinable impairments supported the level of pain claimant claimed to suffer where pain was controlled by medication and claimant refused more invasive procedures); *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.") Similarly, her shoulder pain which she reported to be at a 10 out of 10 severity level in May 2017 was improved by July 2017 with physical therapy. Johnson was also regularly seen by her primary care physician for treatment of her hypertension and hyperlipidemia, which were managed with medication. (Tr. 1209, 1216, 1228, 1242, 1253.) In light of the record, it cannot be said that remand is necessary because there was no opinion evidence regarding Johnson's physical RFC. The ALJ appropriately evaluated Johnson's physical impairments and accounted for those impairments by restricting her to light work with further postural limitations and an overhead reaching limitation for her left upper extremity. The ALJ did not err in declining to obtain opinion evidence regarding physical impairment. *See Naber*, 22 F.3d at 189 (remand is not required as "long as other evidence in the record provides a sufficient basis for the ALJ's decision").

### C.   Limitations in Concentration, Persistence, and Pace

Johnson next argues that the ALJ erred in her evaluation of the mental RFC by failing to include limitations from Johnson's "at-least moderate" limitation in her ability to concentrate. Defendant argues that the mental RFC sufficiently captures the concrete consequences of the

7

ALJ's finding that Johnson had no more than moderate limitation in concentrating, persisting, or maintaining pace.

At step three, the ALJ considered the medical severity of Johnson's mental impairments. (Tr. 18-19.) The ALJ assessed a moderate limitation in Johnson's ability to concentrate, persist, or maintain pace. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The ALJ based this finding on Johnson's testimony regarding her functional limitations as well as the consultative exam. At step four of the RFC assessment, the ALJ concluded that Johnson is limited to performing "simple, routine and repetitive tasks." (Tr. 19.) This RFC mirrored the hypothetical that the ALJ posed to the vocational expert during the hearing on July 11, 2018. (Tr. 61-62.)

Johnson argues that *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996), requires the Court to reverse and remand. In *Newton*, the Eighth Circuit considered whether the hypothetical the ALJ posed to the vocational expert adequately accounted for the claimant's undisputed mental limitations in concentration, persistence, or pace. *Id.* at 695. There, the ALJ's hypothetical described a person with a minimal ability to read and write, a borderline range of intelligence, a ninth or tenth grade education, an inability to perform highly skilled or technical work, a capacity for simple jobs, and a demonstrated ability to control his drinking problem. *Id.* at 694. The Eighth Circuit held that this hypothetical did not adequately account for the claimant's deficiencies of concentration, persistence, or pace. *Id.* at 695.

*Newton* is distinguishable from Johnson's case. The ALJ's hypothetical adequately accounted for each of Johnson's mental limitations. Here, the ALJ asked the vocational expert the following hypothetical, which mirrored the final RFC determination:

> Dr. Taylor, would you consider an individual who is in the younger category who has a GED, and who has had past work that you just described? Would you first consider an individual who's limited to light work? That individual should never climb ladders, ropes or scaffolds. Individual could occasionally climb ramps and

8

stairs, balance, stoop, kneel, crouch and crawl. The individual could occasionally reach overhead with the non-dominant left upper extremity. That individual should have no more than occasional exposure to unprotected heights and unprotected moving mechanical parts. The individual could perform work limited to simple, routine, repetitive tasks involving only simple work-related decisions, few if any workplace changes, and no work with an assembly line or conveyor belt. And finally, the individual should have no more than occasional interaction with coworkers and supervisors, but no contact with the public.

(Tr. 61-62.) This RFC includes limitations reflecting Johnson's moderate deficiencies in concentration, persistence, or maintaining pace. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (RFC restricting a claimant to "work at a normal pace without production quotas" was consistent with the claimant's moderate limitation in concentration, persistence, or pace); *Rhinehart v. Saul*, 776 F. App'x 915, 916 (8th Cir. 2019) (hypothetical including limitation to "simple, routine, [and] repetitive tasks" that "require minimal training" adequately accounted for moderate limitation in concentration, persistence, or pace); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (hypothetical concerning a claimant who is capable of doing simple, repetitive, routine tasks adequately captured the individual's deficiencies in concentration, persistence or pace); *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (hypothetical including work "which does not require close attention to detail" and excluding "work[ing] at more than a regular pace" sufficiently described deficiencies of concentration, persistence or pace). In contrast, the *Newton* hypothetical included no limitations addressing the claimant's deficiencies in concentration, persistence, or pace. That distinction is dispositive. *See Brachtel*, 132 F.3d at 421 (holding that hypothetical including "scantly more" than *Newton* hypothetical was adequate).

Johnson also relies on *Demoreuille v. Colvin,* 2016 WL 3129117 (W.D. Mo. Aug. 3, 2016). There, the ALJ's hypothetical included in relevant part that a person would be "limited to simple, routine, and repetitive tasks requiring only occasional decision making and occasional changes in the work setting; occasional interaction with the public, coworkers, and supervisors."

9

*Id.* at *2. The Western District reversed and remanded on the ground that the limitations did not address the plaintiff's moderate difficulties in concentration, persistence, or pace. *Id.* Notably the ALJ in Johnson's case posed a hypothetical with more limitations than the hypothetical in *Demoreuille,* including limiting the person to "only simple work-related decisions, few if any workplace changes, and no work with an assembly line or conveyor belt" as well as "no contact with the public." (Tr. 61-62.) Additionally, this Court finds more persuasive the numerous cases from this District holding that limitations to tasks that are simple and routine adequately account for a plaintiff's moderate limitations in this area. *See e.g., Faint v. Colvin*, 26 F. Supp. 3d 896, 911-12 (E.D. Mo. 2014) (RFC's limitations to simple, unskilled work sufficiently accommodated the plaintiff's moderate limitations in concentration, persistence, or pace); *Salkic v. Saul*, No. 4:18-CV-1901 HEA, 2020 WL 805868, at *3 (E.D. Mo. Feb. 18, 2020) (limitations to "simple routine tasks" adequately captured the plaintiff's moderate limitations in concentration and attention); *Gonzalez v. Saul*, No. 4:19-CV-1429 SNLJ, 2020 WL 1873410, at *3-4 (E.D. Mo. Apr. 15, 2020) (limitation to "simple and routine tasks" accounted for the plaintiff's limitation to "no more than moderate" limitations in concentration, persistence, and pace); *Goudeau v. Saul*, 2020 WL 7023936, at *5 (E.D. Mo. Nov. 30, 2020) (claimant's moderate limitation in the area of concentration, persistence, or pace was "adequately reflected in the RFC limitation to repetitive tasks and exclusion of work involving an assembly line or conveyor belt."); *King v. Berryhill*, No. 1:18-CV-23 NCC, 2019 WL 1200334, at *5-6 (E.D. Mo. Mar. 14, 2019) (RFC limitation to "unskilled, simple, routine work" appropriately accommodated the plaintiff's moderate limitations in concentration and attention); *Boyd v. Colvin*, No. 4:15-CV-823 NAB, 2016 WL 3257779, at *5 (E.D. Mo. June 14, 2016) (RFC limitation to "simple, routine work consistent with 'unskilled' work" adequately accounted for the plaintiff's moderate limitations in concentration, persistence,

and pace); *Fleming v. Colvin*, No. 4:15-CV-1150 SPM, 2016 WL 4493683, at *8 (E.D. Mo. Aug. 26, 2016) (RFC addressed the plaintiff's concentration deficit by limiting the plaintiff to "simple, repetitive tasks," "only occasional interaction with supervisors, co-workers and the public," and work "which does not require close attention to detail").

Based on the record in this case and the foregoing case law, the Court finds that the ALJ's RFC determination adequately accommodated Johnson's moderate limitations in concentration, persistence, and pace.

        **D.**      **Evaluation of Opinion Evidence**

Johnson argues that the ALJ erred by affording little weight to the treating source statement of Dr. Asif Habib, Johnson's treating physician. Johnson also argues that the ALJ erred in failing to identify the weight given to the opinion of Dr. Keisha Ross, the clinical psychologist who performed a psychological consultative evaluation.

        **1.**      **Asif Habib, M.D.**

On October 17, 2017, Dr. Habib completed two forms titled "Assessment for Social Security Disability Claim" and "Mental Residual Functional Capacity Assessment" for Johnson. (Tr. 360-61.) In the Assessment for Social Security Disability Claim form, Dr. Habib described Johnson's psychiatric history as "schizoaffective disorder. sees things. hears scratching." Dr. Habib stated her present symptomology and current 5 axis diagnosis is "Depression, poor energy, poor concentration." Dr. Habib recommended that Johnson continue her medications, which included Xanax, Wellbutrin, Celexa, Haldol, and Latuda. (Tr. 360.) He left blank the question of his professional opinion as to what extent the patient's mental impairments affect, and/or prevent, their ability to engage in any kind of sustained full-time employment.

11

In the Mental Residual Functional Capacity Assessment, Dr. Habib assessed marked[2] inabilities to maintain a work schedule and be consistently punctual; understand, carry out, and communicate to others simple (one or two-step work instructions); stay on task without distractions or need for redirection; interact appropriately with the general public or customers; and work independently at a competitive pace (without constant supervision). Dr. Habib further assessed Johnson had extreme[3] inability to understand, sequence and carry out detailed (3 or more steps) instructions; maintain adequate attention, concentration and focus on work duties; use judgment and make appropriate simple work related decisions, work in coordination with, or in close proximity to others; accept instruction and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to routine changes in the work setting; control emotions and deal with routine work related stressors; demonstrate reliability in a work setting; and sustain extended periods of employment (greater than 6 months) without decompensation from periodic exacerbation of psychiatric symptoms. (Tr. 361.) Dr. Habib estimated that Johnson would be off task more than 15% of the average workday due to her psychiatric impairments and estimated that she would have to miss work, on average, three days per month.

Under the regulations applicable to Johnson's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2).[4] *See also Tilley v. Astrue*, 580

---

[2] A "marked" inability indicates "a serious limitation. The particular activity could be performed on a satisfactory level only occasionally, no more than 1/3 of the work day."
[3] An "extreme" inability indicates "complete inability to perform the activity independently on a sustained basis."
[4] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c.

12

F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal quotation marks omitted). However, a treating physician's opinion is not inherently entitled to controlling weight. *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ may also "discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. § 404.1527(c)(2)-(6). "When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)). It is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's assessment of the opinion evidence should not be disturbed so long as it falls within the "available zone of choice." *See Hacker*, 459 F.3d at 937-938.

As a preliminary matter, the Court notes that although the ALJ stated that he was giving "little weight" to Dr. Habib's opinion, the ALJ partially accounted for Dr. Habib's opinion that Johnson had limitations in her mental function by including in the RFC that she can perform work limited to simple, routine, repetitive tasks only involving simple, work-related decisions; few, if any workplace changes; and no work with an assembly line or conveyer belt. He further limited her to work with

13

occasional interaction with co-workers and supervisors, and no contact with the general public. (Tr. 19.) As discussed above, these include mental limitations that account for deficiencies in concentration, persistence and pace, as well as interacting with others.

To the extent that the ALJ did discount Dr. Habib's opinions, the Court finds that the ALJ gave good reasons, supported by substantial evidence, that brought the ALJ's decision within the available "zone of choice." The ALJ explained that "[a]lthough Dr. Habib is a treating source and saw the claimant every three months to monitor her medications, I gave his opinion little weight because it is completely inconsistent with his own treatment notes, which show improvement on medication and no side effects." (Tr. 24, 340-352, 364-383.) A review of Dr. Habib's treatment notes shows he did not impose any mental limitations or any work restrictions on Johnson. *See Fischer v. Barnhart,* 56 F.App'x 746, 748 (8th Cir. 2003) ("in discounting [the treating physician's] opinion, the ALJ properly noted that … [the treating physician] had never recommended any work restrictions for [the claimant]"). Dr. Habib's treatment notes do not reflect the degree of limitation he indicated in his October 17, 2017 Assessment for Social Security Disability Claim and Mental Residual Functional Capacity Assessment.

Another reason exists to discount Dr. Habib's opinions. Dr. Habib's assessments were not supported by narrative explanation or reference to objective medical evidence. In fact, Dr. Habib left blank the section of the form asking for his "professional opinion as to what extent this patient's mental impairment(s) affect, and/or prevent, their ability to engage in any kind of sustained full-time employment…" (Tr. 360.) *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012) ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little or no elaboration) (internal quotations omitted). A checklist format and conclusory opinions, even of a treating physician, are of limited evidentiary value. *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010). Further, the assessment forms appear to have been procured by, and submitted to, Plaintiff's

14

counsel. (Tr. 363.) The forms do not refer to any clinical tests or limitations contained in Dr. Habib's prior treatment notes.

Moreover, the fact that Dr. Habib was the only treating source to provide an opinion regarding Johnson's limitations does not mean the ALJ was required to accept it. An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). The ALJ may reject the conclusions of any medical expert if they are unsupported and inconsistent with the record as a whole. *See Johnson v. Apfel,* 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Bentley v. Shalala,* 52 F.3d 784, 787 (8th Cir. 1995)).

Upon review of the record, the Court concludes the ALJ properly evaluated Dr. Habib's medical opinion and provided sufficient explanation for giving his RFC opinions little weight. The Court finds, therefore, that the ALJ's decision to discount the opinion of Dr. Habib is supported by substantial evidence on the record as a whole.

### 2. Keisha Ross, Ph.D.

Johnson also contends that the ALJ erred in failing to indicate the weight he assigned to consultative clinical psychologist Keisha Ross, Ph.D. Specifically, Johnson argues that the ALJ failed to incorporate Dr. Ross's assessment that Johnson has severe or marked limitations in interacting with others and adapting or managing herself. (Doc. 15 at 16-17.)

Dr. Ross completed a Psychological Evaluation dated October 7, 2016. (Tr. 353-356.) After conducting her exam, Dr. Ross described Johnson as "cooperative" and stated that "although she appeared emotional when queried about homicidal ideation,"  Johnson "was able to appropriately interact with Examiner through most of the evaluation." (Tr. 355.) Dr. Ross reported that Johnson's symptoms are best described as schizoaffective disorder, bipolar type, and that "given Claimant's diagnoses, her ability to interact socially in a work environment and adapt to change in the work setting may be severely impacted by her psychological functioning." (Tr. 356.) Dr. Ross further stated that

15

Johnson's prognosis was "Fair with consistent treatment to maximize potential. Claimant would benefit from mental health counseling with a licensed psychologist or licensed social worker to address her mental health disorder. She would also benefit from consistent medication management by a psychiatrist." (Tr. 356.)

The ALJ summarized Dr. Ross's findings, and noted that although Johnson reported to Dr. Ross that she had previously been diagnosed with paranoid schizophrenia, it was not an accurate characterization of Dr. Habib's diagnosis of schizoaffective disorder, and that Dr. Ross also diagnosed Johnson with schizoaffective disorder. The ALJ noted that Dr. Ross reported Johnson's prognoses would be good with consistent treatment and medication compliance. (Tr. 22.) As Johnson points out, the ALJ did not indicate the weight she was assigning to Dr. Ross's opinions.

First, it is worth noting that Johnson's characterization of Dr. Ross's opinion is misleading. Dr. Ross did not opine that Johnson has marked limitations in interacting with others and adapting or managing herself. (Doc. 15 at 17.) Dr. Ross did not specifically opine as to Johnson's mental RFC or characterize any limitations or abilities in the context of mild, moderate, marked, or extreme. Rather, Dr. Ross stated that "Given claimant's diagnoses, her ability to interact socially in a work environment and adapt to change in the work setting may be severely impacted by her psychological functioning." (Tr. 356.)

Second, although the ALJ did not indicate the specific weight assigned to Dr. Ross's findings from her consultative exam, it is clear that he accorded them some weight. In assessing the opinions of another consultative examiner, psychologist Raphael Smith, Psy.D., the ALJ noted that Dr. Smith classified Johnson's mental impairments as severe, and found moderate and mild limitations in the four broad areas of functioning. (Tr. 23, 103.) In giving "some weight" to Dr. Smith's opinions, the ALJ noted that "Dr. Smith's opinion is consistent with the medical evidence of record, especially by [sic] Dr. Ross's mental status examination findings regarding the claimant's memory, and Dr. Habib's treatment notes, if not his assessment." (Tr. 24.) Moreover, the ALJ's RFC determination is consistent

16

with Dr. Ross's findings. The ALJ's error in failing to expressly state the weight she gave to Dr. Ross's opinion is, therefore, harmless. *See Dunbar v. Colvin,* No. 1:13CV8 NAB, 2014 WL 319280, at *5 (E.D. Mo. Jan. 29, 2014) (finding arguable deficiency in opinion-writing technique is not a sufficient reason to set aside an administrative finding where the deficiency has no practical effect on the outcome of the case when the ALJ did not explicitly provide the weight given to a doctor's opinion, because it was clear the ALJ gave some weight to the opinion).

### IV.  Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable mind would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (Docs. 1, 15.)

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of November, 2021.